567 A.2d 347

**EAST PENNSBORO TOWNSHIP, Appellant,**

v.

**PENNSYLVANIA BUILDERS ASSOCIATION, Home Builders Association of Metropolitan Harrisburg, Vernon R. Sealover et al., Appellees.**

Commonwealth Court of Pennsylvania.

Argued June 9, 1989.

Decided Dec. 12, 1989.

Henry F. Coyne, Camp Hill, for appellant.

Loudon L. Campbell, Harrisburg, for appellees.

Before CRUMLISH, Jr., President Judge, BARRY, Judge (P.) and McGINLEY, JJ.

## OPINION

BARRY, Judge.

East Pennsboro Township (Township) appeals from an order of the Court of Common Pleas of Cumberland County granting summary judgment in a declaratory judgment action seeking to invalidate its Partnership Highway Improvement Ordinance (Ordinance). The appellees include a statewide trade association (Pennsylvania Builders Association (PBA)), a regional trade association (Home Builders Association of Metropolitan Harrisburg) and individual builders in their own right (Vernon R. Sealover, t/a Vernon R. Sealover Construction Co. and S & A Custom Built Homes, Inc.),[1] who are required by the Ordinance to pay assessments as a condition of receiving building permits in the Township. We affirm.

The Transportation Partnership Act (Act), Act of July 9, 1985, P.L. 187, *as amended,* 53 P.S. §§ 1621–1626 (Purdon Supp.1989), was passed by the Pennsylvania legislature in response to the decrease in federal aid for the financing of transportation projects. Recognizing that state and local funding capabilities are not always sufficient to meet the transportation needs of a particular area, the Act enables municipalities "to provide funding for transportation projects in areas where economic growth and development has made the transportation facilities and services inadequate." Section 1.1(b) of the Act, 53 P.S. § 1621.1(b).

The Ordinance was enacted on March 3, 1987, pursuant to the Act. The stated purpose of the Ordinance is to establish a ten year capital improvement program for Township highways. Section 4 of the Ordinance designates the entire Township as a transportation district and states that all properties within the Township will benefit from the implementation of the highway improvement program based on the extent and distribution of the projects contained therein.

---

**1.** For purposes of this opinion, the appellees are collectively referred to as PBA.

Section 7 of the Ordinance sets forth, in general terms, the assessments to be imposed upon existing and newly developed properties in order to finance the highway improvement program. Section 7 provides:

Section 7. *Providing for an Assessment on Existing Properties as well as the Developers/Owners of New Buildings Constructed, or Buildings Renovated within East Pennsboro Township.* In order to provide for an Assessment on the existing properties of East Pennsboro Township, the Board of Commissioners will contribute an amount equal to forty percent (40%) of the cost of the projects shown on the ten year highway program, while the Developers/Owners will contribute the remaining sixty percent (60%) of these cost [sic]. These percentages were selected as sixty percent (60%) of the Township is currently undeveloped. The Townships [sic] contribution can be taken from General Fund Monies, Liquid Fuels Tax, State Funds, Federal Funds, or Separate Private Funding, while the Owners/Developers contributions will be determined by the calculation provided for in Sections 8 through 11 of this Ordinance, and the method of payment provided for in Section 13 of this Ordinance.

Section 8 of the Ordinance establishes the calculations to determine the sixty percent assessment on new construction. The total cost of the highway improvement program is $814,500. The Township's forty percent share ($325,800) is subtracted from the total cost, leaving a balance of $488,700 to be assessed to new construction. The study [2] underlying the Ordinance estimates that the total number of average daily vehicle trips generated from new development throughout the township over the next ten years (through 1995) will be 52,095 average daily vehicle trips. By dividing the total cost to be assessed to new construction

2. Section 4(a) of the Act, 53 P.S. § 1624(a), requires a municipality seeking to establish a transportation district to undertake a comprehensive study relative to the program of projects to be financed. This section requires that the study "identify the beneficiaries of all projects in the transportation improvement program and include an analysis of cost allocation among beneficiaries prorated according to benefits to be received".

($488,700) by the estimated number of average daily vehicle trips (52,095), a figure of $9.38 is used as the cost per average daily trip to be imposed on new development.

Section 9 of the Ordinance sets forth trip generation factors listing the estimated number of average daily trips generated from various types of land use. In turn, Section 11 of the Ordinance provides for the actual calculation of assessments on new construction. The calculation requires multiplying the average daily trip multiplier ($9.38) times the trip generation factor derived from Section 9 of the Ordinance and rounding that number to the nearest dollar. For example, the construction of a single family detached residential house results in an assessment of $94 ($9.38 [Section 8 average daily trip multiplier] × 10 [Section 9 trip generation factor for that land use] = $93.80 [$94 when rounded to the nearest dollar].) Payment in full of the calculated assessment on new construction is required prior to the issuance of a building permit. *Ordinance*, Section 13.

The forty percent contribution by existing property owners is taken from the Township's general fund or other sources enumerated above in Section 7 of the Ordinance. The Township's general fund includes revenues from real estate taxation, earned income tax, occupation and per capita taxes, license and permit fees, fines and forfeitures, rental income, public utility tax, beverage tax, county and state grants, sanitation fees and other miscellaneous income.

PBA instituted a declaratory judgment action on May 21, 1987 seeking to invalidate the Ordinance on various grounds. After discovery in this matter, PBA moved for summary judgment on the basis that the Ordinance was contrary to the Act, violated Article VIII, Section 1 of the Pennsylvania Constitution and was in violation of the Equal Protection and Due Process Clauses of the Fifth and Fourteenth Amendments to the Constitution of the United States. The Township filed a cross-motion for summary judgment seeking to have the Ordinance declared valid.

After argument, the trial judge, by opinion and order dated September 6, 1988, entered summary judgment in favor of PBA and against the Township, holding that the Ordinance's assessment method violated the Act. The trial court also ordered an immediate refund of all funds collected pursuant to the Act.[3] This timely appeal followed.

In finding that the Ordinance's assessment methods violated the Act, the trial court did not pass upon each of the issues raised by PBA in support of its argument that the Ordinance is invalid. Accordingly, we will limit our opinion to the issue of whether the assessment method provided for in the Ordinance is violative of the Act. We note that there are no appellate cases applying the Act and, therefore, this appeal presents a question of first impression.

The Act provides, in relevant part, that the governing body of a municipality "may establish within the boundaries of the municipality ... a specific area or areas designated as a transportation development district" for the purpose of taking the steps necessary to construct and operate "transportation facilities or transportation services within the district." Section 2(a) of the Act, 53 P.S. § 1622(a). Pertinent to the present inquiry, a transportation facility project includes the construction and operation of public highways. Section 2(b) of the Act, 53 P.S. § 1622(b). The Act limits proposed projects to those which "expand or improve existing transportation facilities or services" and specifically prohibits the designation of an area as a transportation development district if the purpose of the designation is to maintain or repair an existing facility. Section 2(a) of the Act, 53 P.S. § 1622(a). The Act further requires that "[a]ll properties having a substantial relationship to the proposed transportation facility or service shall be considered benefited by the facility or service and shall be included in the transportation development district." *Id.*

3. A petition for supersedeas was granted permitting the Township to hold the collected funds in escrow until resolution of this matter on appeal.

Of paramount importance in this case, the Act requires that *"each benefited property within the district, existing and newly developed property, be assessed* a portion of the cost of the transportation project." Section 1.1(c) of the Act, 53 P.S. § 1621.1(c) (emphasis added). Under the Act, a municipality is given various options in determining how to finance a transportation facility or service. Section 3 of the Act, 53 P.S. § 1623. The method set forth in Section 3(a)(2) was utilized in this case. It provides that a municipality may finance the project by:

*Imposing a fair and reasonable assessment on each benefited property* within the specific district using a formula adopted by the governing body of the municipality based upon actual or projected usage by each property within the district of the transportation facilities or services to be financed by such district. *There shall be no exception, exclusion or preference granted to any property.*

Section 3(a)(2) of the Act, 53 P.S. § 1623(a)(2) (emphasis added).

In granting summary judgment to PBA and holding the Ordinance invalid, the trial court did not find that the sixty-forty contribution ratio utilized in this case was unfair. However, the trial court did find that the forty percent contribution being made by the existing property owners did not amount to an assessment as required by the Act. We agree.

Section 4 of the Ordinance specifically states that *all* properties within the Township will be benefited by the highway improvement program. That being the case, the Act requires that "each benefited property within the district, existing and newly developed property, be assessed a portion of the cost of the transportation project". Section 1.1(c) of the Act, 53 P.S. § 1621.1(c). In Section 7 of the Ordinance, the Township "assesses" existing property owners through the Township's contribution of forty percent of the costs of the highway improvement program from the Township's general funds, liquid fuels tax, state funds,

federal funds and/or private funding. These sources of revenue are not assessments against existing property owners. A special assessment:

> [I]s in the nature of a tax levied upon property according to benefits conferred on the property. (Citation omitted). [It is a] levy upon the owners of property adjacent to a public improvement (e.g. sidewalks) to defray the capital cost thereof. It is levied for a specific purpose and in an amount proportioned to the direct benefit of the property assessed.

Black's Law Dictionary 107 (5th Ed.1979). This definition is in accord with *City of Philadelphia v. Philadelphia Transportation Co.*, 345 Pa. 244, 257, 26 A.2d 909, 915 (1942), where our Supreme Court distinguished an assessment from a tax and offered "charges imposed for the installation of sewers, water pipes, paving, sidewalks, curbs and the like" as examples of assessments.

We believe that the intent of the legislature to require an assessment is clear from the plain language of the Act. If the legislature had wanted to permit the type financing provided for in the Ordinance, it could have provided for financing by other than assessments. Indeed, in Section 4(a) of the Act, 53 P.S. § 1624(a), for example, the legislature requires an analysis of the "cost allocation among beneficiaries prorated according to benefits to be received". Had this same language been used in Section 1.1(a) of the Act, 53 P.S. § 1621.1(a), so as to require each benefited property to share in the cost allocation of the transportation project, our analysis of this case would be different.[4]

The Ordinance in this case requires new property owners to be assessed an amount based on the projected benefit the new property owners will receive from the Township's highway improvement program. The existing property owners' contribution to the highway improvement program, on the other hand, is derived from the general revenue funds of the Township and not from an assessment levied

4. We express no opinion as to whether such language would be constitutionally permissible.

against the existing property owners based on their actual or projected usage of the planned projects. The language of the Act is specific in that it requires *all* benefited properties to be *assessed* (and not merely share in the cost allocation) in a fair and reasonable manner based on the actual or projected usage of the projects from which the benefit is derived. The Township's failure to assess existing property owners renders the Ordinance invalid as being violative of the Act.

This matter was argued before a panel consisting of Judge Barry, Judge McGinley and Senior Judge Kalish. Due to the untimely death of Senior Judge Kalish, the case was submitted on the briefs to President Judge Crumlish, Jr., for his consideration as a member of the panel.

## ORDER

NOW, December 12, 1989, the Order of the Court of Common Pleas of Cumberland County, dated September 6, 1988, is affirmed.

CRUMLISH, Jr., President Judge.

I agree that the Township's method of assessment violates the Transportation Partnership Act, but for reasons other than those stated by the majority.

Section 3(a)(2) of the Act allows a municipality broad discretion when financing a highway project. No specific assessment method is mandated therein. The only limitation pertinent here is that the municipality impose a fair and reasonable assessment on each benefitted property using a formula based on a property's actual or projected use.

This ordinance violates the Act not because it derives the existing property owner's contribution from the Township's general revenue funds but because there is no precise formula by which to assess existing properties individually and thus insure that *all* properties are assessed in proportion to their actual or projected benefit.

As the common pleas court astutely noted, the undeveloped property owners who pay a one-time assessment when a building permit is issued also contribute taxes to the Township's general fund. Thus, these owners are actually paying for more than the sixty-percent assessment established by the ordinance and thereby bear a burden greater than their expected benefit.